IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

SANDRA D. THOMPSON,                    *

        Plaintiff,                     *

                                       *     CASE NO. 3:06-CV-90(CDL)
vs.
                                       *
CARRIER CORPORATION,
                                       *
        Defendant.
                                       *

                                       *

_____        *

<u>O R D E R</u>

Plaintiff Sandra D. Thompson brings this employment discrimination action against her former employer, Defendant Carrier Corporation, alleging claims for disparate treatment, hostile work environment, and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").[1] Presently pending before the Court is Defendant's Motion for Summary

---

[1]Although it is unclear from Plaintiff's Complaint whether a retaliation claim is being asserted, a liberal reading of her *pro se* Complaint supports the conclusion that Plaintiff intended to assert such a claim. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."). Therefore, the Court will address that claim in this Order particularly given the fact that the parties have both addressed it in their briefs.

1

Judgment (Doc. 27).[2]  For the following reasons, the Court grants Defendant's Motion for Summary Judgment.

BACKGROUND

## I.   Factual Background

Defendant is engaged in the production of cooling systems at its Athens, Georgia facility.  Plaintiff, a black female and member of a Baptist church, was employed as an assembly technician at that facility from January 21, 2003 until February 28, 2006.  Plaintiff alleges that throughout her employment, her co-workers and supervisors harassed and discriminated against her because of her gender,[3] race, and religion.  Specifically, Plaintiff claims that co-worker Sandi Lawrky gave Plaintiff a "nasty look" when Plaintiff wore a religious t-shirt.[4]  (Pl.'s Dep. 67:4-8; 68:1-11, Apr. 15, 2008.) Lawrky did not make any comments regarding the t-shirt or Plaintiff's religious beliefs.  (Pl.'s Dep. 67:16-19; 73:15-18.)  Plaintiff also contends that Dan Feeser, a co-worker, told Plaintiff that "if [she] was a Christian, [she] should be able to handle [the jokes and

---

[2]The Court also has pending before it Plaintiff's Motion to Request Consideration of Plaintiff's Response to Defendant's Statement of Undisputed Material Facts (Doc. 41).  The Court grants this motion, finding that the Court's consideration of Plaintiff's Response to Defendant's Statement of Undisputed Material Facts will not unduly prejudice Defendant.

[3]Although it is unclear from Plaintiff's Complaint that she is alleging a claim of gender discrimination, the Court, construing the Complaint liberally, concludes that she intended to assert such a claim, and therefore, that claim is addressed in this Order.

[4]The front of the t-shirt said "Obedient," while the back of the t-shirt said "The Choice is Yours."  (Pl.'s Dep. 64:22-23.)

2

comments]." (Pl.'s Dep. 62:3-4.) Plaintiff also alleges that her co-workers made jokes and comments regarding her tendency to fall asleep while on the job. (Pl.'s Dep. 59:11-16.) Plaintiff contends that the jokes and comments would not have been made had she been white. (Pl.'s Dep. 96:13-17.) Plaintiff, throughout her employment, made several informal complaints to management regarding the jokes and comments. (*See e.g.*, Pl.'s Dep. 37:10-38:2; 41:21-42:8; Pl.'s Decl. ¶ 3, Aug. 1, 2008.[5])

Plaintiff also contends that Defendant denied her a promotion to a Line Leader position because of her race, religion, and gender, and in retaliation for complaining about the jokes and comments. On November 15, 2005, the Line Leader position was awarded to Miguel Mendez, a Hispanic man. (Mack Decl. ¶ 5, June 13, 2008.) Plaintiff contends that Mendez was not the most qualified person for the job because Plaintiff not only performed the required duties of a Line Leader before the position was filled, but Plaintiff also had to train Mendez on the duties of a Line Leader. (Pl.'s Dep. 93:22-25; 118:11-15.) Geoffrey Mack, Defendant's Business Unit Manager who made the promotion decision, found Mendez to be the best qualified for the position, stating that "[Mendez] had all of the qualifications necessary for the job, that he had the best

---

[5]Plaintiff, in her declaration, submitted two sets of page 6. The first set contained paragraphs 18-21, while the second set contained paragraphs 18-22. For the purposes of this Order, the Court has combined page 6 into one set of paragraphs ranging from 18-22.

demonstrated ability to work well with the other employees in that section, and that he had a superior work ethic." (Mack Decl. ¶ 4.)

Additionally, Plaintiff contends that she was wrongfully terminated from her position with Defendant because of her race, religion, and gender, and in retaliation for complaining about the jokes and comments. On February 28, 2006, Plaintiff was allegedly instructed by Line Leader Mendez to move stations. (Pl.'s Dep. 126:19-23.) Plaintiff contends that she was not instructed to move stations, and that if she was, she would have obeyed a superior's instructions.[6] (Pl.'s Dep. 127:4-6; see Pl.'s Decl. ¶ 14.) Three co-workers of Plaintiff, Cornelius Collins, Greg Devereaux, and Kim Chittitanga, submitted written statements purporting that they witnessed Mendez instruct Plaintiff to move stations, but that Plaintiff ignored Mendez's instructions "three times" and "just stood thire [sic] looking up in the sky." (Exs. 6-8 to Pl.'s Dep.) Plaintiff was terminated for allegedly failing to obey Mendez's instructions. (Pl.'s 127:16-22.)

## II.   Procedural Background

On October 12, 2005, Plaintiff filed a Charge Questionnaire with the Equal Employment Opportunity Commission ("EEOC") regarding alleged acts of retaliation and harassment by Defendant. (Ex. 1 to App. to Pl.'s Resp. to Def.'s Mot. for Summ. J.) Plaintiff

---

[6]Plaintiff stated in her declaration that "[she] did not refuse to follow the directions of the lead person at any time." (Pl.'s Decl. ¶ 14.) Plaintiff also stated in her deposition that, if asked by Mendez to move stations, "[she] would have went there." (Pl.'s Dep. 126:20-21.)

subsequently filed a formal charge of discrimination with the EEOC on March 9, 2006, and then again on June 28, 2006. (Exs. 2-3 to App. to Pl.'s Resp. to Def.'s Mot. for Summ. J.)  The March 9, 2006 charge alleged several incidents of harassment Plaintiff claims she endured while employed by Defendant. (Ex. 2 to App. to Pl.'s Resp. to Def.'s Mot. for Summ. J.)  The June 28, 2006 charge addressed, in pertinent part, Plaintiff's denial of promotion claim. (Ex. 3 to App. to Pl.'s Resp. to Def.'s Mot. for Summ. J.)  On October 31, 2006, Plaintiff filed the present action.  Defendant seeks summary judgment as to each of Plaintiff's claims.

STANDARD OF REVIEW

Summary judgment may be granted only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  When a defendant moves for summary judgment, it is the defendant's burden to show that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  To meet this burden, the defendant may point to "affirmative evidence demonstrating that [the plaintiff] will be unable to prove [her] case at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (internal quotation marks omitted).  In the alternative, the defendant may show "that there is an absence of evidence to support [the plaintiff's] case." *Celotex Corp.*, 477 U.S. at 325.

A defendant is not required to come forth with evidence negating the plaintiff's claim. *See id.*

Once a defendant meets its burden, the plaintiff must produce evidence to show that there *is* a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 324. The plaintiff "must go beyond the pleadings," *id.*, and point to "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); *accord Celotex Corp.*, 477 U.S. at 324. A plaintiff is not required to produce evidence in a form that would be admissible at trial, but she must point to some evidence to show a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 324. Such evidence may be in the form of affidavits, depositions, answers to interrogatories, or admissions on file. *Id.; accord* Fed. R. Civ. P. 56(e).

The defendant is entitled to summary judgment if, after construing the evidence in the light most favorable to the plaintiff and drawing all justifiable inferences in her favor, no genuine issues of material fact remain to be tried. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). It is not enough to have *some* alleged factual dispute; there must be a genuine issue of material fact to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48. A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the plaintiff-there must be more than "some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Anderson*, 477 U.S. at 248.

DISCUSSION

I.   **Disparate Treatment Claims under Title VII**

    A.   <u>Failure to Promote</u>

Plaintiff contends that she was unlawfully denied a promotion in violation of Title VII. Defendant contends that this claim is untimely, and the Court agrees. Under Title VII, a plaintiff seeking redress must file a charge of discrimination with the EEOC "within [180] days after the alleged unlawful employment practice occurred[.]" 42 U.S.C. § 2000e-5(e); *see Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 657-58 (11th Cir. 1993).

Here, the position to which Plaintiff claims she should have been promoted was filled on November 15, 2005. (Mack Decl. ¶ 5.) Plaintiff filed her EEOC charge regarding this claim on June 28, 2006 charge, 225 days after the promotion decision was made. (Ex. 3 to App. to Pl.'s Resp. to Def.'s Mot. for Summ. J.) A promotion is a "discrete act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). The discrete discriminatory act occurs on the day it happens and, thus, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180-. . . day time period after the discrete discriminatory act occurred." *Id.* Because more than 180 days

7

elapsed before Plaintiff sought redress, Plaintiff did not file a timely charge of discrimination. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's failure to promote claim is granted.[7]

B.   Wrongful Termination

Plaintiff also contends that she was terminated because of her race, religion, and gender, in violation of Title VII. Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). Plaintiff may establish a prima facie case of discrimination by presenting either direct or circumstantial evidence of discriminatory intent. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Plaintiff has not pointed the Court to any direct evidence of discriminatory intent. Therefore, Plaintiff must establish discriminatory intent using circumstantial evidence applying the framework established in *McDonnell Douglas Corp.* and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

Under this framework, Plaintiff must show that "(1) she belongs to a protected class; (2) she was subjected to adverse employment

---

[7]Plaintiff acknowledges that her promotion claim is untimely. (Pl.'s Resp. to Def.'s Mot. for Summ. J. 11.)

action; (3) her employer treated similarly situated employees outside her classification more favorably; and (4) she was qualified to do the job." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004). If Plaintiff establishes a prima facie case, then the burden shifts to Defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802. If Defendant carries this burden, Plaintiff "must establish by a preponderance of the evidence that [Defendant's] non-discriminatory reasons are pretextual." *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1017 (11th Cir. 1982). The burden to establish pretext merges with Plaintiff's ultimate burden of proof of intentional discrimination. *See Burdine*, 450 U.S. at 256.

In this case, Plaintiff is unable to establish a prima facie case of discrimination. Although it is undisputed that Plaintiff belongs to a protected class and suffered an adverse employment action, Plaintiff has failed to demonstrate that Defendant treated similarly situated employees outside her class more favorably. Defendant contends that it terminated Plaintiff because she failed to follow a supervisor's instructions. Plaintiff has failed to point the Court to any evidence in the record from which a reasonable factfinder could conclude that other comparably situated employees, who were not in Plaintiff's protected class, were treated differently when they failed to comply with a supervisor's instructions. In

9

support of her prima facie case, Plaintiff offers two comparators, a white female who was not terminated after complaining that "the work was too hard" and a white male who was not terminated after he engaged in a physical altercation.   The Court finds that these employees are not valid comparators. *See Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir. 1997) (per curiam) ("In determining whether employees are similarly situated . . . , it is necessary to consider whether employees are involved in or accused of the same or similar conduct and are disciplined in different ways."); *see also Nix v. WLCY Radio/Rahall Commc'ns,* 738 F.2d 1181, 1185 (11th Cir. 1984). "The plaintiff and the employee she identifies as a comparator must be similarly situated in all relevant respects." *Wilson,* 376 F.3d at 1091 (internal quotation marks omitted).   The Court finds that Plaintiff has not established that her alleged comparators are sufficiently similar in all relevant respects, and therefore, that evidence cannot be considered in the evaluation of Plaintiff's prima facie case.

Even if Plaintiff established a prima facie case of discrimination, Defendant has provided a legitimate, nondiscriminatory reason for Plaintiff's termination, and Plaintiff has produced insufficient evidence of pretext.  Defendant states that it terminated Plaintiff's employment because she failed to follow her supervisor's instructions.   Although Plaintiff disputes that she failed to follow Mendez's instructions, three witnesses corroborate

Defendant's position.  (*See* Exs. 6-8 of Pl.'s Dep.)  Plaintiff has produced no evidence other than her own testimony demonstrating that she was terminated for some reason other than the one given by Defendant.  "[W]here the employer produces . . . documentary evidence of misconduct and insubordination that demonstrate poor performance, an employee's assertions of [her] own good performance are insufficient to defeat summary judgment, in the absence of other evidence."  *Holifield*, 115 F.3d at 1566.  Plaintiff has failed to demonstrate that Defendant's proffered reason for the termination is unworthy of credence.  "[A] plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, as long as the reason is one that might motivate a reasonable employer."  *Roper v. Foley*, 177 F. App'x 40, 49 (11th Cir. 2006) (per curiam) (internal quotation marks omitted).  "It is by now axiomatic that [the Eleventh Circuit] cannot second-guess the business decisions of an employer."  *Rowell v. BellSouth Corp.*, 433 F.3d 794, 798 (11th Cir. 2005); *see Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1254 (11th Cir. 2000) (per curiam).  Since Plaintiff has not produced sufficient evidence from which a reasonable factfinder could conclude that Defendant's stated legitimate reason for its termination of Plaintiff was pretextual, Defendant is entitled to summary judgment even if Plaintiff could establish a prima facie case of discrimination.  Accordingly,

Defendant's motion for summary judgment is granted as to Plaintiff's wrongful termination claim.

## II.  Hostile Work Environment Claim

Plaintiff next contends that she suffered from a hostile working environment in violation of Title VII.  A hostile work environment claim under Title VII is established upon proof that "'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  In order to establish a hostile work environment claim under Title VII, Plaintiff must show: (1) that she belongs to a protected group; (2) that she suffered from unwelcome harassment; (3) that the harassment was based on a protected characteristic of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment; and (5) that the employer was responsible for such environment.[8]  *Id.*

---

[8]In deciding whether a hostile environment exists, the Eleventh Circuit examines several factors, including "the frequency of the discriminatory conduct, the severity of the discriminatory conduct, whether the conduct is threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's performance at work." *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1521-22 (11th Cir. 1995); *Miller*, 277 F.3d at 1276 (finding that the hurling of ethnic slurs three to four times a day constituted sufficiently frequent harassment).

It is undisputed that Plaintiff belongs to a protected group and that the harassment Plaintiff allegedly suffered was unwelcome. However, Plaintiff has failed to show that the harassment was based on a protected characteristic, such as her race, religion, or gender. (*See, e.g.,* Pl.'s Dep. 41:6-7; 45:12-46:11; 47:16-22; 51:9-17; 55:24-56:9; 73:2-11; 76:1-7; 79:25-80:6; 111:11-18; 167:11-21; 169:1-11.)[9] In fact, Plaintiff acknowledges that the harassment she did suffer at work related to her alleged frequent daytime naps, and not to her race, religion, or gender. (*See, e.g.,* Pl.'s Dep. 40:15-17; 44:3-25; 59:11-16.)   Additionally, although Plaintiff contends that the harassment would not have occurred if she was white, Plaintiff has failed to point the Court to any evidence in the record to support this assertion. (*See, e.g.,* Pl.'s Dep. 166:11-25.)

The only two incidents that Plaintiff discussed in her deposition and declaration that addressed Plaintiff's religious beliefs do not amount to discrimination.  Although perhaps unpleasant and rude, Lawrky's "nasty look" allegedly made when Plaintiff wore a religious t-shirt, (Pl.'s Dep. 67:4-8; 68:1-22), in no way

---

[9]Plaintiff introduced three written statements in the record to support her contention that she suffered from actionable harassment and discrimination while employed by Defendant. (*See* Exs. 9-11 of Pl.'s Dep.) However, two of the statements were written by close relatives of Plaintiff who, although co-workers, had no personal knowledge of any alleged harassment.   (*See* Exs. 9-10 of Pl.'s Dep.)   Because these affidavits are based on inadmissible hearsay, they cannot be considered on a motion for summary judgment. *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999).  While the third statement was written by a co-worker with personal knowledge, the statement, which provided that Plaintiff "just didn't mix and mingel [sic] with [her] co-workers," is clearly irrelevant to this case.  (*See* Ex. 11 to Pl.'s Dep.)

constitutes unlawful discrimination, especially considering the fact that Lawrky made no comments regarding the t-shirt or Plaintiff's religious beliefs. (Pl.'s Dep. 67:16-19; 73:15-18.) Additionally, Plaintiff's contention that Feeser's statement—"if [she] was a Christian, [she] should be able to handle [the rude comments and jokes]"—was discriminatory is speculative at best. (*See* Pl.'s Dep. 62:5-24.)

Even if these two incidents are sufficient to show that the alleged harassment was based upon Plaintiff's religion, race or gender, they were clearly not sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment. One statement and one nasty look over the course of three years does not amount to "severe or pervasive harassment." Even if Plaintiff considered these actions to be unfriendly and the result of personal animosity against her, that is not sufficient to give rise to a Title VII claim. Title VII "is not a shield against harsh treatment at the work place. Personal animosity is not the equivalent of [] discrimination and is not proscribed by Title VII." *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1986) (internal quotation marks omitted). Therefore, for all of the foregoing reasons, Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim. Accordingly, Defendant's Motion for Summary Judgment is granted as to that claim.

14

**III. Retaliation Claim**

Lastly, Plaintiff contends that she was wrongfully terminated in retaliation for informal complaints she made to management while employed by Defendant. "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [an employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [an employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). In order for Plaintiff to establish a prima facie case of retaliation under Title VII, Plaintiff must show that "(1) [s]he engaged in statutorily protected expression; (2) [s]he suffered an adverse employment action; and (3) there is some causal relation between the two events." *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998). Once the prima facie case is established, Defendant "must proffer a legitimate, non-retaliatory reason for the adverse employment action." *Id.* Plaintiff "bears the ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct." *Id.*

Plaintiff was terminated prior to filing her EEOC charges. Therefore, her retaliation claim must be based upon her informal

complaints of discrimination made prior to her termination.[10] Protection afforded by the retaliation provision of Title VII "is not limited to individuals who have filed formal complaints, but extends as well to those, like [Plaintiff], who informally voice complaints to their superiors or who use their employers' internal grievance procedures." *Rollins v. Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989) (per curiam).

Plaintiff can establish that she engaged in statutorily protected activity under Title VII's opposition clause only if "'[s]he shows that [s]he had a good faith, *reasonable belief* that the employer was engaged in unlawful employment practices.'" *Adams,* 242 F. App'x at 621 (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)). Plaintiff must not only show that she subjectively believed she was being discriminated

---

[10]Plaintiff contends that her Charge Questionnaire, filed with the EEOC on October 12, 2005, is relevant to her Retaliation claim against Defendant. However, Plaintiff failed to point the Court to any evidence in the record that would suggest that Defendant actually received the Charge Questionnaire before Plaintiff's termination. Moreover, even if the Court were to assume that Defendant received the Charge Questionnaire in October 2005, the four-month gap between the date of Plaintiff's Charge Questionnaire and Plaintiff's termination is insufficient as a matter of law to prove a causal connection between the two events. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (holding that a three-month gap between the protected activity and the adverse employment action was insufficient to show a causal connection under the plaintiff's Title VII retaliation claim). Because Plaintiff has failed to point the Court to any other evidence to establish a causal connection between the protected activity and the adverse employment action, an analysis of the Charge Questionnaire under Plaintiff's retaliation claim is not appropriate.

against, but also that her "belief was *objectively* reasonable in light of the facts and record presented." *Little*, 103 F.3d at 960.

For purposes of the present motion, the Court finds that Plaintiff has produced sufficient evidence that she subjectively believed she was being discriminated against by Defendant. However, even when construing the evidence in the light most favorable to Plaintiff, she cannot establish that her belief was *objectively reasonable*. (*See, e.g.,* Pl.'s Dep. 41:6-7; 45:12-46:11; 47:16-22; 51:9-17; 55:24-56:9; 73:2-11; 76:1-7; 79:25-80:6; 111:11-18; 167:11-21; 169:1-11.)   Because it was not objectively reasonable for Plaintiff to have believed that Defendant unlawfully discriminated against her, her informal complaints of discrimination do not amount to statutorily protected activity, *see Adams*, 242 F. App'x at 622, and thus, Plaintiff has failed to make out a prima facie case of retaliation.

Even if Plaintiff could establish a prima facie case of retaliation, she still could not prevail.  As explained previously, Defendant has provided a legitimate, non-retaliatory reason for Plaintiff's termination, and Plaintiff has produced insufficient evidence of pretext.  Therefore, even if Plaintiff could establish a prima facie case of retaliation, Defendant would be entitled to summary judgment on that claim.  Accordingly, Defendant's motion for summary judgment is granted as to Plaintiff's retaliation claim.

CONCLUSION

In summary, the Court finds that no genuine issues of material fact exist as to Plaintiff's Title VII claims for disparate treatment, hostile work environment, and retaliation, and Defendant is entitled to judgment as a matter of law as to each of Plaintiff's claims.  Therefore, Defendant's Motion for Summary Judgment (Doc. 27) is hereby granted.


IT IS SO ORDERED, this 26th day of September, 2008.


                                    S/Clay D. Land
                                    CLAY D. LAND
                          UNITED STATES DISTRICT JUDGE

18